IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*   2018 APR 25 P 2: 08

ALICIA WATKINS,

    Plaintiff,

v.   Case No.: GJH-17-780

CABLE NEWS NETWORK, INC., *et al.*,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Self-represented Plaintiff Alicia Watkins brings this defamation and false light claim against Defendants Cable News Network, Inc. ("CNN") and Dylan Byers, a CNN reporter, based on a series of publications on the social media website Twitter (commonly referred to as "tweets") and an article that CNN and Byers published about Watkins in March 2016. ECF No. 16 at 1.[1] As explained in further detail below, Watkins had appeared at a press conference for then-presidential candidate Donald Trump, and several news organizations ran articles regarding Watkins's background.[2] In her Amended Complaint, Watkins alleges that Defendants are liable under causes of action for False Light and Defamation. *Id.* at 8–9. Watkins seeks compensatory damages of at least $2,000,000, and punitive damages of at least $5,000,000. *Id.* at 14. Now pending before the Court is Defendants' Motion to Dismiss the Amended Complaint. ECF No. 18. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion to Dismiss is granted.

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[2] This case is one of five such suits that Watkins filed in this Court. *See Watkins v. The Washington Post, et al.*, No. 17-cv-00818-PWG; *Watkins v. Carr, et al.*, No. 17-cv-819-PX; *Watkins v. The Air Force Times, et al.*, No. 17-cv-893-TDC; *Watkins v. Guardians of Valor LLC, et al.*, No. 17-cv-894-GJH.

I.  **BACKGROUND**[3]

On March 21, 2016, then-presidential candidate Donald Trump was giving a press conference at the Old Post Office Pavilion in Washington, D.C.[4] Trump called on Watkins, who was in the audience, to ask a question. Watkins said that she was a 9/11 survivor and was appreciative of Trump's policy towards the military. She asked him if he would hire military veterans at his Trump Hotel in Washington. Trump asked her what kind of position she was looking for, and invited her onto the stage. He told her that she looked "smart" and "good," and asked if she minded doing a job interview "right now." He proceeded to ask her what her experience was, and then directed her to an assistant who was standing on the side, and told the audience "she's probably going to have a job." Following the press conference, Watkins answered questions from other reporters regarding her background, and how she came to be at the press conference.[5] One reporter asked her "Do you work with the Veterans Affairs Department? Who do you write for? Do you write for somebody?" Watkins responded "No, I'm a freelance artist. I submit stories and submit like on posts and blogs and everything else."[6]

Following the press conference, at 5:23 pm on March 21, 2016, Byers tweeted that "Trump spox says Alicia Watkins . . . is woman who asked Trump about job at hotel. No evidence she works for a media org." ECF No. 16-1 at 2. Byers also included a link to a

---

[3] Unless otherwise stated, the background facts are taken from Plaintiff's Amended Complaint, ECF No. 16, and are presumed to be true.
[4] The Court may take judicial notice of facts that can be can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Wireless Buybacks, LLC v. Hanover Am. Ins. Co.*, 223 F. Supp. 3d 443, 451 (D. Md. 2016) (quoting Fed. R. Evid. 201(b)). The Court may take judicial notice on its own. Fed. R. Evid. 201(c)(1). The press conference was televised on C-SPAN and saved on their website. *Presidential Candidate Donald Trump Hires African American Woman Veteran Alicia Watkins*, C-SPAN (March 21, 2016), https://www.c-span.org/video/?c4586027/presidential-candidate-donald-trump-hires-african-american-woman-veteran-alicia-watkins (last accessed March 28, 2018). Thus, the Court takes judicial notice of the C-SPAN recording. *See also Battle v. A&E Television Networks, LLC*, 837 F. Supp. 2d 767, 772 n.2 (M.D. Tenn. 2011) (taking judicial notice of the contents of a television program that formed the basis of a defamation/false light suit).
[5] This video also aired on C-SPAN and was saved on their website. *Alicia Watkins: Vet at Trump press conference is a 911 survivor*, C-SPAN (March 21, 2016), https://www.c-span.org/video/?c4586040/alicia-watkins (last accessed March 28, 2018). As articulated above, *supra* n.4, the Court takes judicial notice of this video as well.
[6] *Id.*

Huffington Post article from March 2015 regarding Watkins's background. *Id.* At 5:24 pm, a reporter for The Guardian, Ben Jacobs, responded that "She claimed she had her own website called 'Troop Media' to reporters. No evidence of it on the Internet." ECF No. 16-2 at 2. At 5:25 pm, Byers responded "None. TroopMedia.com is a graphic design site: troopmedia.com/index.html." ECF No. 16-3. A user named "Erica" responded to Byers and Jacobs with a comment: "because it's troopmedia.org." *Id.* At 6:35 pm, Byers tweeted a link to an article he had written on money.cnn.com, along with the caption "Somehow Alicia Watkins, who is not a reporter, got a press credential, which got her a job interview with Trump." ECF No. 16-4 at 2.

In the article, titled "Behind Trump's 'job interview' with Alicia Watkins," Byers explains that Watkins "was not a member of the press." ECF No. 18-2 at 2. He states that she is "a retired Air Force staff sergeant who has appeared on Oprah," and "was given media credentials by the Trump campaign and permitted to ask a question of the candidate." *Id.* Byers goes on to relay that the Trump campaign "initially told CNNMoney that Watkins worked for 'a site called Troops Media which focuses on military and veterans issues.' When told that there was no evidence of any such site on the Internet, the Trump campaign said it would look into the matter." *Id.* Furthermore, Byers described how after he tweeted that Troops Media did not seem to exist, "CNNMoney received a call from a woman who identified herself as Alicia Watkins who said she would send an email explaining 'why Troop Media is no longer on the Internet as of today.' The woman, who said her phone was about to run out of battery, hung up while being asked if she still wanted to identify herself as a reporter. . . . The promised email has yet to arrive." *Id.* at 3.

3

On March 21, 2017, Watkins filed a Complaint against CNN and Byers. ECF No. 1. On October 5, 2017, she filed an Amended Complaint, and attached screenshots of the above-described tweets. ECF No. 16.[7] In her Amended Complaint, Watkins brings causes of action for false light and defamation. *Id.* at 8–9. Specifically, Watkins takes issue with Defendants' statements that "Plaintiff's website did not exist on the internet," *id.* at 8, "that Ms. Watkins is a dishonest non-member of the media who was 'behind' some plot," *id.* at 9, and that these statements were published because of CNN's "hatred and feud with President Trump," *id.* Watkins seeks compensatory damages of at least $2,000,000, and punitive damages of at least $5,000,000. *Id.* at 14.

On October 26, 2017, Defendants filed a Motion to Dismiss the Amended Complaint. ECF No. 18. They argue that they are entitled to dismissal because: Watkins has not sufficiently pleaded plausible claims against them; no statement made by Defendants is substantially false; the statements contain non-actionable expressions of opinion; and Watkins, as a limited-purpose public figure, has not plausibly pleaded that the statements were made with actual malice. *Id.* at 2–3. On October 27, 2017, the Clerk of the Court sent a letter to Watkins explaining that Defendants had filed a motion to dismiss against her, that she had the right to file a response, and that "[i]f you do not file a timely written response, the Court may dismiss the case or enter judgment against you without further notice." ECF No. 19 at 1. Watkins has not filed a response. On February 16, 2018, Defendants filed a "Notice of Supplemental Authority," notifying the

---

[7] Although she did not attach the CNN article, in her Complaint she states that "[t]he entire article is attached." ECF No. 16 at 7. Defendants attached a copy of the article to their Motion to Dismiss, which the Court considers as integral to the Complaint. *See Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (reasoning that when a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity"). Watkins does not challenge the article's authenticity, and quotes it extensively in her Complaint.

4

Court that Judge Grimm had dismissed a similar case that Watkins filed against The Washington Post and two of its writers. ECF No. 20.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Accepting the facts as alleged in the Complaint as true, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), when reviewing a motion to dismiss, the Court "may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013).

The Court is mindful that Watkins is a *pro se* litigant. A federal court must liberally construe *pro se* pleadings to allow the development of potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Cruz v. Beto*, 405 U.S. 319 (1972). Liberal construction does not mean, however, that this Court can ignore a clear failure in the pleadings to allege facts sufficient to state a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## III. DISCUSSION[8]

### A. Choice of Law

Before discussing Plaintiff's individual claims, the Court, exercising its diversity jurisdiction over state-law claims, must determine which state's law to apply. Watkins does not identify under which state's laws she is asserting her claims. Defendants argue that:

> Where, as here, all of the CNN Defendants' defenses "depend upon the application of a federal constitutional limitation on state defamation claims," and "[t]hese limitations

---

[8] As Watkins did not respond to Defendants' Motion to Dismiss, the Court could consider her claims abandoned, and grant the Motion to Dismiss on those grounds. *See Watkins v. Washington Post*, No. PWG-17-818, 2018 WL 805394 (Feb. 9, 2018) ("Failure to respond to the defendants' arguments constitutes abandonment of those claims") (citing *Whittaker v. David's Beautiful People, Inc.*, No. DKC-14-2483, 2016 WL 429963, at *3 n.3 (D. Md. Feb. 4, 2016); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 669 n.9 (D. Md. 2013); *Ferdinand–Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 & 783 (D. Md. 2010)).

apply with equal force to causes of action arising under" either Maryland or D.C. law, Defendants reference cases from both jurisdictions because the Court's resolution of this motion does not turn on which jurisdiction's law applies.

ECF No. 18 at 11.

"A federal court sitting in diversity must apply the choice-of-law rules from the forum state." *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999). For tort claims, Maryland adheres to the First Restatement of Conflict of Laws rule, *lex loci delicti commissi*, or the law of the place of the harm, to determine the applicable substantive law. *See Naughton v. Bankier*, 114 Md. App. 641 (1997). "In defamation actions, the location of the harm is the place where the defamatory statements were published to third parties." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 698 (D. Md. 2011). Where communication is published simultaneously in multiple states, application of Maryland's traditional place of harm rule "becomes cumbersome, if not completely impractical." *Liddy*, 186 F.3d at 527. "Because the *lex loci delicti* rule fails to reach a satisfactory result on multistate defamation issues, other district courts in this jurisdiction have ruled that the Court of Appeals of Maryland would adopt the rule stated in the Restatement (Second) of Conflict of Laws." *Ground Zero Museum Workshop*, 813 F. Supp. 2d at 699 (collecting cases). The Second Restatement, in pertinent part, provides:

> (1) The rights and liabilities that arise from defamatory matter in any ... broadcast over radio or television ... or newspaper ... or similar aggregate communication are determined by the local law of the state which ... has the most significant relationship to the occurrence and the parties[.]
> (2) When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state.

Restatement (Second) of Conflict of Laws § 150 (1971 & Supp.1995). "In most cases, the plaintiff's state of residence bears the most significant relationship to the incident and parties

because that is where the plaintiff's reputation suffers the most." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 699 (D. Md. 2011).

Plaintiff is a citizen of the State of Maryland, ECF No. 16 at 2, and absent any evidence of another state with a significant relationship, the Court applies Maryland law.

### B. Defamation Claim

Defendants argue that "Plaintiff's claims are not plausible on their face." ECF No. 18 at 9. Defendants encourage the Court not to rely on "Plaintiff's unsubstantiated conclusions" (e.g., that the Defendants reported that she "was 'behind' some sinister plot," "lied about her credentials," and, with Trump, "'staged' their interaction," *id.* at 10 (quoting ECF No. 16 at 6)) and to, instead, examine the contents of the article and tweets themselves. Looking to the article and tweets, Defendants argue that Plaintiff has not plausibly pleaded that any statement made is substantially false. *Id.* at 11. Even if any statement was substantially false, Defendants argue that Plaintiff has not pleaded that any false statements were "more damaging than a truthful report." *Id.* at 12.

To establish a case of defamation, a plaintiff must plead: "(1) ... the defendant made a defamatory statement to a third person, (2) ... the statement was false, (3) ... the defendant was legally at fault in making the statement, and (4) ... the plaintiff suffered harm." *Lindenmuth v. McCreer*, 233 Md. App. 343, 356–57 (2017). A defamatory statement is "one 'which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person.'" *Id.* at 357 (quoting *Batson v. Shiflett*, 325 Md. 684 (1992)). "A false statement is one that is not substantially correct." *Id.* "[I]n all defamation actions, 'truth is no longer an affirmative defense to be established by the defendant, but instead the burden of proving falsity rests upon the

8

plaintiff." *Telnikoff v. Matusevitch*, 347 Md. 561, 594 (1997) (quoting *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 595 (1976)).

Here, Plaintiff has not plausibly pleaded that Defendants made a defamatory statement that was not "substantially correct." Plaintiff alleges that the following statements were false: that she was not a member of the media, ECF No. 16 at 5; that she hung up while being asked if she wanted to identify herself as a reporter, *id.* at 7; and that her website did not exist on the internet, *id.* at 8.[9] None of these statements is "not substantially correct." Watkins simply states that these were defamatory but does not plead that she is a member of the media, that she did not call CNN and hang up on them, and that her website does exist on the internet. *Cf. Telnikoff v. Matusevitch*, 702 A.2d 230, 246 (Md. 1997) ("[I]n all defamation actions, 'truth is no longer an affirmative defense to be established by the defendant, but instead the burden of proving falsity rests upon the plaintiff.'"). In fact, when asked by reporters if she wrote for any news organization, she responded "No, I'm a freelance artist."[10] Thus, it was substantially correct for Defendants to report that Watkins was not a member of the media. Furthermore, Watkins does not dispute that she called CNNMoney, as described in the article, or that she offered to send an email explaining "why Troop Media is no longer on the internet as of today." ECF No. 18-2 at 3. Thus, it was substantially correct for Defendants to report that her website was not on the Internet.

The only statement that Watkins has arguably pleaded was not substantially correct is the statement that Watkins hung up on CNNMoney as they were asking if she still wanted to be

---

[9] Watkins complains about a number of additional statements that she alleges Defendants made: that she "either lied about her credentials and/or conspired with the Trump campaign, *id.* at 6; that Watkins was part of "some plot," ECF No. 16 at 9; and that Watkins was "posing" as a member of the media, *id.* at 11. Despite Watkins's use of quotation marks around this language, the allegations she complains of do not appear in the article or any of Byers's tweets.

[10] *Alicia Watkins: Vet at Trump press conference is a 911 survivor*, C-SPAN (March 21, 2016), https://www.c-span.org/video/?c4586040/alicia-watkins (last accessed March 28, 2018).

9

identified as a member of the media. Watkins alleges that this was a lie, ECF No. 16 at 8, and the Court must accept her well-pleaded allegations as true. However, even where a plaintiff pleads that a defendant made a false statement, a plaintiff must show that "allegedly false statements were *additionally* damaging beyond the damage that would have been caused had [defendants] truthfully reported the circumstances." *Brown v. Ferguson Enter.,Inc.*, No. CCB-12-1817, 2012 WL 6185310, at *3 (D. Md. Dec. 11, 2012) (emphasis in original). *See also Batson*, 325 Md. at 726 ("Put another way, a statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.") (internal quotations omitted).

Here, Watkins has not pleaded how the statement that she hung up on CNNMoney as they asked if she still wanted to be identified as a reporter caused additional damage. The impact of the article was that a woman unassociated with any media organizations had been granted media credentials, allowed to ask Trump a question, and was pulled on-stage for an impromptu "interview." The fact that she hung up on CNNMoney while being asked if she still wanted to be identified as a reporter added little to the article, and Watkins has not alleged that it caused her additional damage.

Thus, Watkins has not plausibly pleaded a claim for defamation, and the Court grants Defendants' Motion to Dismiss, ECF No. 18, on this claim.[11]

---

[11] Because the Court concludes that Defendants did not make statements that were false or defamatory, it need not assess Defendants' remaining arguments: whether Defendant's articles were non-actionable expressions of opinion and whether Watkins is a limited-purpose public figure. However, the Court would independently dismiss because Watkins has not pleaded that Defendants acted with actual malice. Watkins does not dispute that she is a public figure for defamation purposes, given her recurring appearances in the public spotlight. *See* ECF No. 18 at 7–8, 16 (in unopposed Motion, Defendants summarize all of Watkins's public appearances, including being promoted as a participant of a reality TV show in March 2016, the same month as the events of this case). As a public figure, to plead a claim of defamation she must plead that Defendants acted with actual malice. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964). To establish actual malice for defamation purposes, a plaintiff must prove by clear and convincing evidence that a defamatory statement was a "calculated falsehood or lie 'knowingly and deliberately published.'" *Capital–Gazette Newspapers, Inc. v. Stack*, 445 A.2d 1038, 1044 (Md. 1982). Watkins's allegations of

### C. False Light Claim

In Maryland, courts discussing a false light invasion of privacy claim have stated that:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other person was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Furman v. Sheppard*, 130 Md. App. 67, 77 (2000). An allegation of false light "must meet the same legal standards as an allegation of defamation." *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012). Where a plaintiff brings both defamation and false light claims and the court finds that the defendants did not defame the plaintiff, a separate analysis of the false light claim is deemed to be "superfluous." *Id.* As the Court has already determined that Watkins has not met the pleading standard for her claim of defamation, it similarly finds that she has not plausibly pleaded a claim of false light. Thus, the Court grants Defendants' Motion to Dismiss, ECF No. 18, on this issue.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 18, is granted. A separate Order shall issue.

Date: April 25, 2018

GEORGE J. HAZEL
United States District Judge

---

malice are mere recitations of the legal standard she is required to plead, *see, e.g.*, ECF No. 16 at 10 ("Evidencing a reckless disregard for truth or falsity, CNN published accusations . . . that were so inherently improbable on their face . . . ."), and do not sufficiently plead that Defendants were at fault for their publications. *See also Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 761 (D. Md. 2015) (holding that "bare recitation of the legal standard" and "naked assertions alone" are insufficient to "support a finding of malice"). Thus, the Court would independently dismiss Watkins's defamation claims on this basis.